1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

                          Plaintiff,

v.

QUI-HONG SUN,

                          Defendant.

No. CR 02-0197P
No. CR 02-445P

ORDER ON DEFENDANT
SUN'S MOTION FOR WRIT OF
ERROR CORAM NOBIS

        This matter comes before the Court on Defendant Qui Hong Sun's Motion for a Writ of Error

Coram Nobis (Dkt. No. 110). Ms. Sun claims that the guilty pleas she entered before this Court in

2003 violated the Sixth Amendment because her counsel did not clearly advise her that these pleas

would cause her to become deportable and result in her continuous detention while she pursued her

asylum claim. The United States government contends that Ms. Sun's Motion for a Writ of Error

Coram Nobis is futile because she will lose her asylum appeal regardless of her status as a criminal

defendant. The Government also argues that Ms. Sun had adequate assistance of counsel during plea

negotiations, at the time she plead guilty, and at her sentencing. Having reviewed Defendant's

Motion, the Government's Response, Defendant's Reply and Supplemental submission (Dkt. No.

122), as well as having heard oral argument on this issue, the Court finds that Ms. Sun meets all of

the criteria necessary to qualify for a writ of error coram nobis and hereby GRANTS Defendant's

Motion for a Writ. This Order has the effect of VACATING the Judgments against her in criminal

cause numbers 02-00197P and 02-00445P.

BACKGROUND

Ms. Sun came to the United States in 1997.  Shortly thereafter she met her husband, Yadwinder Singh, and the two got married and had a son.  Defendant has submitted evidence showing that throughout the course of Mr. Singh's and Ms. Sun's relationship, Mr. Singh abused Ms. Sun and threatened her. (Def's Ex. 5-9).  In August 2001 Mr. Singh took their son to India to visit his relatives, but when he returned his son was not with him.  Mr. Singh had left the child with his family in India, where he was inaccessible to Ms. Sun.

Mr. Singh also reportedly led Ms. Sun to believe that he was a U.S. citizen, when in fact he was not.  Mr. Singh filed a petition for adjustment of Ms. Sun's immigration status, which resulted in the Bureau of Immigration and Customs Enforcement (formerly the Immigration and Naturalization Service) commencing removal proceedings against her in February 2000.  Ms. Sun then filed for asylum based on her claim that she is a Falun Gong practitioner.  Her claim has been denied twice by an immigration judge and the appeal is now pending before the Ninth Circuit.

In June 2002, Ms. Sun, Mr. Singh, and Rajinder Pal Singh were charged with several counts of bank fraud in case CR 02-00197.  Later that year, Ms. Sun was charged with passport fraud in case CR 02-00445 for traveling to China with a fake passport and under an assumed name.  Ms. Sun's role in the bank fraud case was "limited" according to her pre-sentence report in that case. (Def's Ex. 10, ¶43).  Ms. Sun now claims that she had been coerced by her husband into participating in his bank fraud scheme on the threat that she would never see her son again, if she did not cooperate.

Ms. Sun was represented by attorney Stephen Illa during the plea negotiations and through the acceptance of her guilty pleas in both cases.  Mr. Illa knew that Ms. Sun was concerned about her immigration status and that it was a possibility that Ms. Sun could face potential immigration consequences as a result of her plea, but relied on her immigration attorney Jimmy Wu to advise her on immigration law.  Early versions of the plea agreement presented to Ms. Sun contained a clause providing for her voluntary deportation upon completion of her sentence. (Def's Mot. at 5).

1  Through Mr. Illa, Ms. Sun objected to this clause on the grounds that she had an asylum claim

2  pending and feared returning to China.  As a result, the final version of the plea agreement contained

3  no language concerning deportation, but did include other penalties as a result of Ms. Sun's refusal to

4  accept the voluntary deportation clause. (Def's Ex. 21).  For this reason, Ms. Sun claims that she

5  believed that she was no longer in danger of deportation because of her convictions, and agreed to

6  accept the plea, despite the fact that she had a potential defense of duress.   Similarly, she believed

7  that the passport fraud charge was a lesser crime and that she faced no immigration jeopardy due to

8  that offense.  Neither her defense counsel nor her immigration counsel disabused her of this notion.

9  During this time, Ms. Sun sent letters to her immigration counsel specifically asking him about her

10  immigration status, but alleges that the only reply she received was that he would continue to fight

11  her asylum case for her at his regular hourly rate.  Neither Mr. Illa nor Mr. Wu warned her about the

12  deportability of people convicted of aggravated felonies or crimes of moral turpitude.

13       The fact that Ms. Sun was surprised to have been taken into custody by immigration

14  authorities after her sentencing was evident to this Court and is reflected in the transcript of her

15  sentencing, as well as letters that Ms. Sun wrote to the Court immediately after her conviction.  (See

16  Case number 02-0197, Dkt. No. 66, at. 20-21; Def's Ex. 20-22).  Ms. Sun has remained in

17  immigration custody since February 7, 2003.

18                                      ANALYSIS

19  **I. The Writ of Error Coram Nobis**

20       The U.S. Government argues that Ms. Sun's Motion for a Writ of Error Coram Nobis is not

21  ripe because the immigration judge denied her asylum claim without considering her criminal cases.

22  Because of this circumstance, contends the Government, Ms. Sun is not currently in jeopardy of being

23  deported because of her criminal convictions.  Additionally, the Government also argues that the writ

24  should not be granted because Ms. Sun had effective assistance from counsel and that this Court

25  imposed a lawful sentence.  Ms. Sun, on the other hand, argues that she faces severe immigration

26  penalties as a result of her guilty pleas, which she entered into without appropriate advice from her

ORDER ON DEFENDANT SUN'S MOTION
FOR WRIT OF ERROR CORAM NOBIS– 3

attorneys.  The Court finds that Ms. Sun has presented sufficient evidence that the immigration liabilities she faces are grave and that the advice she received from counsel was inadequate.  For this reason, the Court GRANTS Ms. Sun's Motion.

**A.  The Use of the Writ**

The Court derives its authority to issue a writ of error coram nobis from the All Writs Act. 28 U.S.C. §1651(a); United States v. Kwan, 407 F. 3d 1005, 1011 (9th Cir. 2005).  The writ is an ancient remedy that has been used in modern times to challenge the convictions of criminal defendants who have completed their sentences.  Because these individuals are not in custody, the traditional remedy of habeas relief is no longer available to them.  United States v. Mett, 65 F. 3d 1531, 1534 (9th Cir. 1995). Although Ms. Sun is in immigration custody, she has completed her criminal sentence and is no longer in criminal custody with the Bureau of Prisons.  Thus, the writ of error coram nobis is the proper procedural mechanism for re-visiting Ms. Sun's criminal convictions.

**B.  Four Requirements for Relief Under the Writ**

The Ninth Circuit has set forth four requirements that Ms. Sun must meet in order to qualify for a writ of error coram nobis: 1) a more usual remedy is unavailable; 2) valid reasons exist for not attacking her conviction earlier; 3) the adverse consequences from her conviction are sufficient to satisfy the Article III case or controversy requirement; and 4) the error is of a fundamental nature. Kwan, 407 F. 3d at 1011 (citing Estate of McKinney By and Through McKinney v. United States, 71 F. 3d 779 (9th Cir. 1995).  Ms. Sun has demonstrated to the Court that she meets all of these requirements and that she received inadequate advice from her counsel during the course of her plea negotiations and through sentencing.

1.  A More Usual Remedy is Unavailable

As stated above, Ms. Sun is out of custody of the bureau of prisons and has served her time for her criminal convictions.  For this reason, she cannot challenge her criminal conviction through habeas proceedings under 28 U.S.C. §2255.  The Ninth Circuit has observed: "'[t]he writ of error coram nobis affords a remedy to attack a conviction when the petitioner has served his sentence and

ORDER ON DEFENDANT SUN'S MOTION
FOR WRIT OF ERROR CORAM NOBIS– 4

1   is no longer in custody.'" <u>Kwan</u>, 407 F. 3d. at 1009, (<u>quoting</u> <u>McKinney</u>, 71 F. 3d 779 at 781.)

2   Although Ms. Sun is in immigration custody, her confinement is of a civil, not criminal nature and

3   habeas based on her current confinement would not address her criminal convictions.  Ms. Sun

4   qualifies for no other remedy to challenge her convictions other than the writ of error coram nobis.

5            <u>2.  Valid Reasons Exist for Not Attacking Her Conviction Earlier</u>

6            Immediately after being taken into immigration custody, Ms. Sun wrote three letters to this

7   Court expressing her confusion about why she was in custody.  (Def's Ex. 20-22).  This Court

8   forwarded those letters on to her counsel at the time, asking counsel to bring any necessary issues

9   formally before the court in a motion.  Although more than two years have passed since Ms. Sun sent

10  those letters, this period of time will not bar a writ of error coram nobis because it was not through

11  Ms. Sun's neglect that this issue was not brought before the Court earlier.  While laches may bar a

12  claim for a writ of error coram nobis, courts only tend to resort to dismissal for laches where they

13  find that "petitioner has delayed for no reason whatsoever. . .the respondent demonstrates prejudice,

14  or where the petitioner appears to be abusing the writ."  <u>Id</u>. at 1013.  Here, Ms. Sun was sentenced to

15  time served, so she was not in the bureau of prison's custody after her sentencing in order to be able

16  to challenge the sentence through habeas.  Additionally, because she wrote letters to the Court, she

17  may have assumed that she had already raised the issue.

18           At oral argument, the United States raised the issue that it would be prejudiced if it were

19  forced to re-open Ms.Sun's case for trial because much of the evidence against her may have already

20  been destroyed.  However, the Government has not established with certainty the fact that the

21  evidence in question has been destroyed because it has not yet attempted to reconstitute the

22  electronic evidence in this case.  The Court notes that it may be possible to recover at least some of

23  this evidence.  When compared to deportation, the prejudice to the government, though not

24  insignificant, is much less serious.  Finally, there is no allegation that Ms. Sun is attempting to abuse

25  the writ or trying to circumvent other, more proper procedural mechanisms.  For this reason, the

26  Court finds that this factor also weighs in favor of granting Ms. Sun's motion for a writ.

ORDER ON DEFENDANT SUN'S MOTION
FOR WRIT OF ERROR CORAM NOBIS– 5

1     3.  The Adverse Consequences From Her Conviction are Sufficient to Constitute a Case or

2     Controversy

3         In its Response to Defendant's Motion, and at oral argument, the Government argued that

4 Ms. Sun is facing no adverse consequences from her conviction because the appeal of her asylum case

5 that is currently before the Ninth Circuit is based on a proceeding that did not take her convictions

6 into account.  This view of the matter is short-sighted, however.  The Government's assessment that

7 the Ninth Circuit will deny Ms. Sun's claim is mere speculation until such an order issues.  Under 8

8 U.S.C. §§1158(b)(2)(B)(i) and (ii), Ms. Sun is statutorily ineligible for asylum with her convictions in

9 place.  In the case that the Ninth Circuit grants Ms. Sun's appeal and remands her case to an

10 immigration judge, Ms. Sun will face deportation on the basis of her convictions, regardless of the

11 merits of her asylum case.

12         Given the danger that asylum seekers potentially face in their home countries, being denied the

13 chance to prosecute an asylum is a very serious collateral consequence of conviction that could have

14 a severely negative impact on one's life.  In Kwan, where the Defendant faced deportation for an

15 aggravated felony, but was not an asylum seeker, the Ninth Circuit held that, "[i]t is undisputed that

16 the possibility of deportation is an 'adverse consequence' of Kwan's conviction sufficient to satisfy

17 Article III's case or controversy requirement." Id. at 1014.  In Ms. Sun's case, she not only faces

18 deportation, but has alleged possible harm in her home country, as a result of her convictions.  These

19 consequences are serious enough to satisfy the Constitution's case or controversy requirement and to

20 justify a grant of a writ of error coram nobis in Ms. Sun's favor.

21     4.  The Error is Fundamental

22         Here, Ms. Sun is claiming that she has received ineffective assistance of counsel in negotiating

23 her pleas and through sentencing on both matters.  The right to counsel is clearly set forth in the Sixth

24 Amendment to the Constitution and is recognized as a right that is fundamental to the criminal justice

25 system in this country.  See Gideon v. Wainwright, 372 U.S. 335, 344 (1963).

26

1    If Ms. Sun was denied effective assistance of counsel, this is a fundamental error that would justify

2    use of the writ of error coram nobis to vacate her convictions and allow her new proceedings. Mett,

3    65 F. 3d 1531, 1534 (9th Cir. 1995).

4    **II.  Ineffective Assistance of Counsel**

5         The government contends that Ms. Sun had adequate counsel during her plea negotiations,

6    her acceptance of the pleas, and her sentencing.  The government observes that she had the benefit of

7    both a criminal and an immigration attorney and that a Chinese language translator was provided to

8    her at all pertinent instances.  However, Ms. Sun argues that she was not advised about the fact that

9    certain classifications of convictions can result in a person becoming automatically deportable.  In

10   order to demonstrate ineffective assistance of counsel, Ms. Sun must show: "1) that [her] counsel's

11   performance fell below an objective standard of reasonableness, and 2) that the deficiency in [her]

12   counsel's performance prejudiced [her]."  Kwan, 407 F. 3d at 1014.

13        **A.  Deficient Performance of Counsel**

14        In Kwan, the Ninth Circuit held that counsel for Mr. Kwan provided "objectively

15   unreasonable" assistance when the attorney failed to advise the client of a change in law that made it

16   almost certain that Mr. Kwan's guilty plea would result in deportation.  In its opinion, the Ninth

17   Circuit highlighted the fact that Mr. Kwan's attorney advised him before the law was changed that

18   there was a low likelihood of deportation, but failed to update this advice once the law had changed.

19   Kwan, 407 F. 3d at 1015. While the Ninth Circuit recognized that merely failing to advise a client

20   about the possibility that she will be deported does not, without more, constitute ineffective

21   assistance of counsel under U.S. v. Fry, the court of appeals found that Kwan's attorney knew that

22   immigration issues were of concern for his client and that he misled his client about the immigration

23   consequences of his case. Id. at 1015, citing U.S. v. Fry, 322 F. 3d 1198, 1200 (9th Cir. 2003).

24   Although the court refrained from deciding what exactly would constitute "more" under Fry, it found

25   that Mr. Kwan's attorney's failure to amend his immigration advice did constitute ineffective

26   assistance of counsel in the factual context of that case.  In making this evaluation, the court

ORDER ON DEFENDANT SUN'S MOTION
FOR WRIT OF ERROR CORAM NOBIS– 7

1   referenced commentary contained in the second edition of the American Bar Association's ethical

2   standards for criminal defense attorneys, which stated that defense counsel should fully advise a client

3   if a conviction could result in deportation. <u>Id.</u> 1016.

4          The newest version of the American Bar Association's ethical standards for criminal defense

5   attorneys exhorts defense attorneys to take an active, rather than passive role in talking to their clients

6   about possible collateral consequences of conviction, including immigration consequences.  ABA

7   Standards for Criminal Justice 14-3.2 Comment, 126-127 (3rd ed. 1999).  Although the authors of this

8   commentary recognize that there is a diverse array of penalties following conviction, and it may not

9   be possible to fully brief clients on *every* consequence of conviction, they have recognized that

10  immigration consequences deserve a defense attorney's special attention in jurisdictions like ours

11  where, "many clients' greatest potential difficulty, and greatest priority, will be the immigration

12  consequences of conviction." Id.   Additionally, because of the sensitive nature of communications

13  between a criminal defendant and her defense attorney, the commentary recognizes that, "only

14  defense counsel is in a position to ensure that the defendant is aware of the full range of consequences

15  that may apply in his or her case." Id. at 126.

16         In this case, the Defendant is an asylum seeker.  Like the attorney in <u>Kwan,</u> Ms. Sun's defense

17  attorney should have known that the potential immigration repercussions of her convictions were of

18  utmost importance to her.  The attorney here also knew that his client was an outsider to our legal

19  system and had some difficulty understanding court proceedings in English.  Notwithstanding these

20  facts, defense counsel took a passive role in investigating and advising his client about whether or not

21  her convictions could lead to deportation.  Although he was in some communication with Mr. Wu

22  about Ms. Sun's case and forwarded copies of the pleas to Mr. Wu, the record does not show that he

23  took it upon himself to find out from Mr. Wu, or elsewhere, what might happen to Ms. Sun's

24  immigration status should she accept the pleas.  Mr. Illa also took no steps to explain to his client that

25  the removal of language regarding voluntary deportation from the plea would not make her immune

26  to deportation generally.

ORDER ON DEFENDANT SUN'S MOTION
FOR WRIT OF ERROR CORAM NOBIS– 8

1   Defense attorneys who take the cases of non-citizen criminal defendants should have a basic

2   understanding of the immigration consequences of different convictions.  In the case where an

3   attorney recognizes that he lacks sufficient knowledge in this area to advise a client appropriately, he

4   should take affirmative steps to ensure that the client is receiving accurate advice regarding

5   immigration issues.  In this case, defense attorney Illa recognized that he was ill-equipped to advise

6   Ms. Sun about whether or not she would be deportable post-conviction, but it was objectively

7   unreasonable for him to not ensure that she was receiving this information from another source in

8   light of his client's grave concern about whether or not she would be deported.

9   **B. Prejudice to Defendant**

10   A criminal defendant, once having demonstrated objectively unreasonable error on the part of

11   her attorney, may only claim ineffective assistance of counsel if she can also show that "but for

12   counsel's unprofessional errors, the result of the proceeding would have been different." Kwan, 407

13   F. 3d. at 1017.  Here, Sun had a valid defense, but chose not to use it, thinking that she would not

14   become deportable.  Instead, she chose to take a plea that she would not have taken had she been

15   properly informed of the immigration ramifications of her decision.  Because Ms. Sun has

16   demonstrated that her counsel in this case acted in an objectively unreasonable way when he did not

17   seek out legal information he knew was crucial to her plea decision and because the Court believes

18   that Ms. Sun would not have accepted the pleas had she been informed, the Court finds that the

19   Defendant in this case received ineffective assistance of counsel.

20   **III. Conclusion**

21   Because Defendant was ineffectively represented by counsel at the time she negotiated and

22   accepted the pleas in these criminal matters, and because Defendant meets all of the criteria for a Writ

23   of Error Coram Nobis to issue on her behalf, the Court hereby GRANTS Defense Motion for a Writ

24   of Error Coram Nobis and VACATES Ms. Sun's criminal convictions in these matters.

25   The clerk is directed to send copies of this order to all counsel of record.

26   Dated: December 27, 2005.

ORDER ON DEFENDANT SUN'S MOTION
FOR WRIT OF ERROR CORAM NOBIS– 9

1

2

3

4

Marsha J. Pechman
United States District Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER ON DEFENDANT SUN'S MOTION
FOR WRIT OF ERROR CORAM NOBIS– 10